**UNITED STATES of America, ex rel., William I. KOCH and William A. Presley, Plaintiffs,**

v.

**KOCH INDUSTRIES, INC., et al., Defendants.**

**No. 91–CV–763–K.**

United States District Court, N.D. Oklahoma.

July 6, 1999.

Phil Pinnell, United States Attorney, Tulsa, OK, Gordon Jones, U.S. Department of Justice, Washington, DC, Steve Altman, U.S. Dept of Justice, Washington, DC, for United States of America.

David Edward Keglovits, Kristin L. Oliver, Gable & Gotwals, Tulsa, OK, Roy Morrow Bell, Timothy P. Irving, James W. Stubblefield, Miller Boyko & Bell, San Diego, CA, James M. Sturdivant, Gable & Gotwals, Tulsa, OK, for William I Koch, plaintiff.

David Edward Keglovits, Kristin L. Oliver, Gable & Gotwals, Tulsa, OK, Roy Morrow Bell, Timothy P. Irving, James W. Stubblefield, Miller Boyko & Bell, San Diego, CA, James M. Sturdivant, Gable & Gotwals, Tulsa, OK, for William A Presley, plaintiff.

Harvey D. Ellis, Jr, Clyde A. Muchmore, Timila S. Rother, Mark S. Grossman, Wesley C. Fredenburg, Crowe & Dunlevy, Oklahoma City, OK, Robert L. Howard, James M. Armstrong, Foulston & Siefkin, Wichita, KS, David Luce, Legal Dept—Litigation Section, Wichita, KS, for Koch Industries, Inc., Koch Exploration Co. and Koch Service, Inc., defendants.

### ORDER

KERN, Chief Judge.

Now before the Court are the objections of both parties to the Magistrate Judge's Report and Recommendation filed April 7, 1999. The Court has undertaken a de novo review, pursuant to Rule 72(b) F.R.Cv.P. This is an action brought pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(b)–(f). These provisions "authorize private individuals, acting on behalf of the United States, to bring a civil action against those who defraud the government." *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1517 (10th Cir.1996).

The Precision Company ("Precision"), acting as such a private party or "relator" under the FCA, filed a complaint in this court on May 25, 1989. Plaintiff alleged that the defendants, Koch Industries, Inc. and numerous subsidiaries, "by deliberate and systematic mismeasurement, had understated to the United States the quantity of crude oil and natural gas produced from Federal and Indian lands." *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 550 (10th Cir.1992), *cert. denied*, 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993) (*Koch I* ). The complaint (case no. 89–C–437) was assigned to the Honorable H. Dale Cook, who dismissed the action for lack of subject matter jurisdiction, finding that Precision as relator did not meet the jurisdictional requirements of 31 U.S.C. § 3730(e)(4). The Tenth Circuit affirmed the decision in *Koch I*.

Judge Cook's order of dismissal was entered November 27, 1990. While the decision was on appeal, Precision filed a second *qui tam* action on September 30, 1991. The complaint was assigned the present case number, 91–CV–763. The allegations were virtually identical, but in the interim Precision had apparently undertaken to remove the jurisdictional infirmity identified by Judge Cook. The infirmity involved the relator failing to provide information upon which the alleged wrongdoing was based to the government. The decision in *Koch I* was rendered July 27, 1992. In affirming, the Tenth Circuit relied upon an alternative ground and effectively ruled that Precision could never be a *qui tam* relator as to these allegations. *See* 971 F.2d at 554.

Plaintiffs then filed an amended complaint on August 3, 1992. Again, the allegations were identical to the previous complaints, but the amended complaint added William I. Koch and William A. Presley, the two sole shareholders of Precision, as plaintiffs. The Honorable Thomas R. Brett of this court dismissed the amended complaint, ruling that the two individual plaintiffs had been improperly added. Another appeal followed, and the Tenth Circuit reversed and remanded. *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015 (10th Cir.1994) (*Koch II* ). Precision was subsequently dismissed as a plaintiff on October 26, 1994.

The action has since been transferred to the undersigned [1].

Both sides have filed motions for partial summary judgment relating to the application of the FCA's statute of limitations and the effect of the first amended complaint upon it. The Magistrate Judge recommended that this Court find that the first amended complaint relates back to the original complaint in this case (91–CV–763), but does not relate back to the complaint filed in the original case (89–C–437). Further, the Magistrate Judge recommended that a six-year statute of limitation was applicable to the claims in this case.

Rule 15(c) F.R.Cv.P. provides that "an amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . ." The rationale of the rule is that, "once litigation involving particular conduct or a given transaction has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arose out of the same conduct, transaction or occurrence as set forth in the original pleading." 6A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1496 at 64 (2d ed.1990) (hereafter "Wright & Miller").

■ First, plaintiffs object to the Magistrate Judge's conclusion that the first amended complaint should not relate back to the original complaint in 89–C–437. The Magistrate Judge correctly found that the issue is governed by Tenth Circuit precedent. In *Benge v. United States*, 17 F.3d 1286, 1288 (10th Cir.1994), the court stated "a separately filed claim, as opposed to an amendment or a supplementary pleading, does not relate back to a previously filed claim." In their objection, plaintiffs contend that the Court should invoke the doctrine of equitable tolling and find the statute of limitations was tolled while the parties "argued" over who was the correct relator in 89–C–437.

As an initial matter, defendants protest that plaintiffs are improperly raising the equitable tolling argument for the first time, and did not address it before the Magistrate Judge. Plaintiffs respond that the issue was implicitly present in the presentation before the Magistrate Judge. The Court elects to consider the issue.

■ A federal statute of limitations may be equitably tolled in a *narrow* range of situations. *Benge*, 17 F.3d at 1288. The doctrine is implied in every federal statute of limitations where its application is consistent with congressional intent, and called for by the facts of the case. *Ebrahimi v. E.F. Hutton & Co. Inc.*, 852 F.2d 516, 521 (10th Cir.1988). The Court sees nothing in the language of § 3731(b) which indicates congressional preclusion of equitable tolling. Therefore, the Court declines to adopt defendants' argument that the FCA has completely "displaced" equitable tolling with statutory tolling.

■ Turning to the application itself, plaintiffs contend that the Magistrate Judge's recommendation renders the government "the loser". The government is the real party in interest, plaintiffs state, and "should not lose its right to recover damages by virtue of the dispute over who should be its champion. . . ." This argument quickly runs aground on statutory language. The FCA grants the government the right to intervene in a *qui tam* action and become a party plaintiff. 31 U.S.C. § 3730(b)(2). The government has declined to exercise its intervention right in this action. Any wound to the government in this regard is self-inflicted.

Plaintiffs finally argue for equitable tolling based upon the "technical defect" in the identity of the relator and the fact that plaintiffs

---

1. Plaintiffs (with leave of court) filed a second amended complaint on October 29, 1998, after briefing was already completed on these cross-motions for partial summary judgment. The parties agree that the only additional relation-back issue raised by the second amended complaint is whether the new FCA violations asserted arise out of the same transaction or occurrence set forth in the original and first amended complaints. Defendants will file a separate motion on this issue. *See* Report and Recommendation at 14 n. 7.

"offered" before Magistrate Judge Wolfe and Judge Cook to intervene in 89–C–437. The FCA does not consider a proper relator a mere technicality, but as a prerequisite to subject matter jurisdiction. 31 U.S.C. § 3730(e)(4)(A). Judge Cook ruled that Precision was not an "original source" for the material, thus was not a proper relator, and thus the court lacked jurisdiction. The Tenth Circuit affirmed on that basis. Plaintiffs state that the Tenth Circuit rejected Judge Cook's ground for dismissal and affirmed on a different ground. This view differs from that of the Tenth Circuit that the *Koch I* decision "agreed" with Judge Cook's holding, but "amplified" the ruling in another aspect. *Koch II*, 31 F.3d at 1016.

The distinction has significance, in view of plaintiffs' contention that they "offered" to intervene in 89–C–437. Plaintiffs have made no citation to the record where this offer took place. The use of the colloquial term is somewhat vague. Litigants do not usually "offer" to a Court to do something. Litigants usually file motions and receive rulings. Defendants have responded that "plaintiffs never moved to intervene in [89–C–437] ... until the Tenth Circuit ruled in the appeal in that case...." The Court need not attempt to resolve the dispute for the following reason. Judge Cook dismissed 89–C–437 based upon one prong of the "original source" test (failure of William Presley as Precision's president to turn over all information to the government) and the Tenth Circuit affirmed and *added* a finding as to the second prong (Precision did not have "direct and independent" knowledge of the information). Under the "mandate rule" governing appellate decisions, both prongs now stand established in 89–C–437. Even if the present plaintiffs, as individuals, had requested intervention in the original case, they did not qualify as "original sources" at that time according to Judge Cook's ruling. Apparently, the plaintiffs have acted to remove any impediment in the interim, but that does not affect the correctness of Judge Cook's ruling and the Tenth Circuit's affirmance thereof.

■ In sum, plaintiff have not shown the balance of equities to be in its favor, certainly not to the extent that the Court would find an equitable exception to an unqualified ruling by the Tenth Circuit in *Benge* regarding the inapplicability of "relation back" to a separate action. Again, the equitable tolling doctrine is narrow and not to be lightly expanded. *See Ebrahimi*, 852 F.2d at 522 n. 9. The Court affirms that portion of the Report and Recommendation which finds that the first amended complaint in this case does not relate back to the complaint filed in 89–C–437. The Court declines plaintiffs' alternative suggestion that the time-barred (in the Court's view) claims be submitted to the jury anyway, in case the Tenth Circuit reverses on this point. Such a procedure ensures a lengthier trial, and risks introduction of irrelevant or prejudicial material unnecessarily.

■ The defendants' objection focuses upon a single aspect of the Report and Recommendation, the conclusion that the first amended complaint in 91–CV–763 (i.e., the case at bar) *does* relate back to the original complaint in 91–CV–763. Rule 15(c) F.R.Cv.P. governs the relation back of amendments. By its terms, the Rule only addresses the relation back of amendments adding defendants. However, the advisory committee notes to the 1966 amendment to the Rule state that "the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." One requirement for relation back to apply under Rule 15(c) is that there must be a mistake in the original pleading as to the proper party. The issue between the parties is whether the committee note means that all provisions of Rule 15(c), including the "mistake" requirement, apply to all amendments adding or substituting plaintiffs.

Arguing that this is the proper interpretation, defendants contend that plaintiffs cannot show there was a "mistake" in originally naming Precision as plaintiff, but rather that it was a deliberate strategic decision. Plaintiffs argue that the "mistake" provision results in a "windfall" under these facts and should not apply in this context, because plaintiffs were merely substituted with no change in the claims asserted. In the alternative, plaintiffs argue that naming Precision

as relator-plaintiff proved to be a "mistake of law" cognizable under Rule 15(c).

Defendants fire all guns, but are unable to sink the authority relied upon by the Magistrate Judge. "As long as a defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense." 6A Wright & Miller, § 1501 at 154–55 (2d ed.1990) (footnote omitted). This principle is supported by case authority cited within the treatise. The authority upon which defendants rely, such as *Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir.1995), is distinguishable. As the Magistrate Judge noted, these cases involve the addition of new *claims* in which the policy behind statutes of limitations is implicated.

In the alternative, defendants assert that an amended complaint does not relate back to a complaint over which the Court lacked subject matter jurisdiction. Essentially, defendants contend that because Precision was not a proper relator, the original complaint was a nullity to which no relation back may take place. Defendants raised the same argument before the Tenth Circuit in *Koch II* relating to the amendment itself, and that court rejected it.

Defendants contend that the Tenth Circuit ruled only as to permitting the amendment under Rule 15(a), not relation back under Rule 15(c). While an accurate statement, this Court finds the reasoning expressed by the Tenth Circuit leads to the same result. The appellate court found the amendment proper because, by the time the non-correctable lack of standing of Precision was pronounced by the Tenth Circuit, "the second complaint, ostensibly viable, was before the district court." 31 F.3d at 1019.

In the cases cited by defendants, the district court had *dismissed* an original complaint for lack of subject matter jurisdiction. Plaintiff then filed an amended complaint seeking to correct the defect and also sought to relate the amended complaint back to the original complaint. In the case at bar, by contrast, a district court case was still *in esse*

at the time the amended complaint was filed. Substituting one relator for another under the FCA is the functional equivalent of an amendment to properly assert subject matter jurisdiction. It is established that "[a]mendments curing a defective statement of subject matter jurisdiction ... will relate back...." 6A Wright & Miller, § 1497 at 80 (2d ed.1990) (footnote omitted). Again, the Court agrees with the Magistrate Judge's recommendation.

The final issue before the Court is the appropriate interpretation of the FCA's statute of limitations. Only the plaintiffs have objected to the Report and Recommendation in this regard. 31 U.S.C. § 3731(b) provides as follows:

> A civil action under section 3730 may not be brought—
>
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

Before the 1986 amendments, the FCA had a six-year statute of limitations from the date the violation was committed. Congress added § 3731(b)(2) in those amendments. Not for the first time, it has been left to the courts to decipher unclear congressional language.

As the Magistrate Judge noted, two interpretations have largely occupied the field. The first is that § 3731(b)(2) only applies to the government, not to a private relator. This view has been adopted in *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 6 F.Supp.2d 263 (S.D.N.Y. 1998) and *United States ex rel. El Amin v. George Washington Univ.*, 26 F.Supp.2d 162 (D.D.C.1998). This interpretation is based upon the statute's reference to an "official of the United States" and legislative history which indicates that Congress was concerned

about the government not being able to bring an FCA action because of difficulties in detecting fraud.

The other predominant interpretation is represented by *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir.1996). In *Hyatt*, the Ninth Circuit ruled that (1) the tolling provision of 31 U.S.C. § 3731(b)(2) applies both to the government and to qui tam plaintiffs and (2) as to qui tam plaintiffs, the statute of limitations begins to run when the plaintiff knew or should have discovered the facts underlying the alleged fraud. This interpretation was based on the Ninth Circuit's view of the "plain language" of the statute, which does not expressly limit § 3731(b)(2) to the government, and what the court found to be ambiguous legislative history on the point.

A third interpretation of the statute has been made, and it is this interpretation which plaintiffs herein promote. In *United States ex rel. Colunga v. Hercules, Inc.*, 1998 WL 310481 (D.Utah 1998), the District Court of Utah held that § 3731(b)(2) applied to both the government and to relators, but that the three year limitation does not begin to run until the Department of Justice received information as to the violation.

The Magistrate Judge declined to adopt the *Colunga* interpretation and reasoned that he need not choose between the other two possible interpretations. This conclusion was based upon a factual finding that plaintiffs had the relevant knowledge of alleged fraud more than three years before this action was filed. Accordingly, the Magistrate Judge concluded the six year limitation of § 3731(b)(1) applied.

Upon review, the Court agrees that the *Colunga* analysis is consistent with the "plain language" of the statute only when "[c]onsidered in isolation and superficially examined." *United States ex rel. Bidani v. Lewis*, 1999 WL 163053 (N.D.Ill.1999). If forced to choose between the two predominant interpretations, the Court finds more persuasive the reasoning of *Thistlethwaite* and *El Amin*, i.e., that the three-year knowledge requirement in § 3731(b)(2) only applies to cases in which the government intervenes. However, the Court agrees with the Magistrate Judge

that such a choice need not be made under the facts of this case.

■ Regarding the Magistrate Judge's detailed discussion of evidence demonstrating that plaintiffs had knowledge of the alleged fraud more than three years before the filing of this action, plaintiffs have devoted only a footnote, stating that they incorporate "previous briefing". It is doubtful that such an effort rises to the level of an objection to the Report and Recommendation. In the absence of objection, a party waives appellate review of both factual and legal questions. *Talley v. Hesse*, 91 F.3d 1411, 1412 (10th Cir.1996). Further, plaintiffs state in the footnote that the Magistrate Judge erred in concluding that Koch and Presley *each* had sufficient knowledge. (Plaintiffs' objection at 11 n. 2). As defendants point out, this cannot be the test. Sufficient knowledge by *either* Koch or Presley would trigger the statute of limitations. (Defendants' response at 18). In any event, the Court has reviewed the previous briefing, and concludes the Magistrate Judge's factual finding as to plaintiffs' knowledge should also be affirmed.

The Report and Recommendation is a model of thoroughness on difficult issues. The parties have eloquently presented their objections, but the Court finds the Magistrate Judge's recommendations to be sound.

It is the Order of the Court that the objection of the defendants (# 478) and the objection of the plaintiffs (# 477) to the Report and Recommendation (# 473) filed April 7, 1999 are hereby DENIED in all respects.

In accordance with the Report and Recommendation, the motion of the defendants for partial summary judgment (# 280) and the motion of the plaintiffs for partial summary judgment (# 260) are hereby GRANTED in part and DENIED in part.

Specifically, pursuant to Rule 15(c) F.R.Cv. P., the first amended complaint filed in this action relates back to the filing of the original complaint filed in this action September 30, 1991, but does not relate back to the original complaint filed in 89–C–437. Further, the statute of limitations applicable to the FCA claims in the first amended com-

plaint is the six-year limitation contained in 31 U.S.C. § 3731(b)(1), not the ten-year limitation contained in 31 U.S.C. § 3731(b)(2). Plaintiffs may, therefore, pursue any FCA claim that accrued after September 30, 1985. All parties agree that the FCA claims in the first amended complaint accrue when defendants submit a monthly royalty report to the federal government or to an Indian tribe or when defendants submit a monthly accounting to a 100% division order purchaser.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 625
   A. RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 625
   B. LEGAL ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 626
      1. Relation Back, Fed.R.Civ.P. 15(c)—Which Complaint Stopped the Statute of Limitations From Running as to the Claims Now Being Asserted by Plaintiffs William I. Koch and William A. Presley? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 626
      2. Statute of Limitations, 31 U.S.C. § 3731(b)—What Limitations Period is Applicable in this Case? . . . . . . . . . . . . . . . . . . . 626
II. RELATION BACK—WHICH COMPLAINT STOPPED THE STATUTE OF LIMITATIONS FROM RUNNING AS TO THE CLAIMS NOW BEING ASSERTED BY PLAINTIFFS WILLIAM I. KOCH AND WILLIAM A. PRESLEY? . . . . . . . . . . . 626
   A. WHAT STANDARD SHOULD BE USED TO DETERMINE WHETHER AN AMENDMENT ADDING OR CHANGING A PLAINTIFF RELATES BACK UNDER FED.R.CIV.P. 15? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 628
   B. THE FIRST AMENDED COMPLAINT IN THIS CASE RELATES BACK TO THE ORIGINAL COMPLAINT IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . 630
   C. THE FIRST AMENDED COMPLAINT IN THIS CASE DOES NOT RELATE BACK TO THE COMPLAINT FILED IN THE *PRECISION I* CASE . . . . . . . . . . . . 630
      1. Tenth Circuit Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 630
      2. The Language of Fed.R.Civ.P. 15(c) . . . . . . . . . . . . . . . . . . . . . . . . . 631
      3. Effect of Prior Dismissal Without Prejudice . . . . . . . . . . . . . . . . . 632
   D. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 633
III. WHICH LIMITATIONS PERIOD IN 31 U.S.C. § 3731(b) IS APPLICABLE TO THIS CASE? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 633
   A. LANGUAGE USED IN § 3731(b)—THE FCA'S STATUTE OF LIMITATIONS . . . 633
   B. LEGISLATIVE HISTORY OF § 3731(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . 634
   C. PLAINTIFFS CANNOT BENEFIT FROM § 3731(b)(2)'S EXTENDED LIMITATIONS PERIOD UNDER EITHER OF THE ONLY TWO PLAUSIBLE INTERPRETATIONS OF § 3731 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 635
      1. If § 3731(b)(2) Applies to Relators, the Relators' Knowledge is Sufficient to Trigger § 3731(b)(2)'s Three–Year Limitations Period. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 635
         *a. Plaintiffs' Cases* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 638
         *b. Plaintiffs' Knowledge* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 638
   D. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 641
CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 642
OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 642

### REPORT AND RECOMMENDATION

JOYNER, United States Magistrate Judge.

The following motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Fed.R.Civ.P. 72:

1. Plaintiffs' Motion for Partial Summary Adjudication With Respect to the Statute of Limitations, [Doc. No. 260]; and

2. Defendants' Cross–Motion for Partial Summary Judgment With Respect to the Statute of Limitations, [Doc. No. 280].

For the reasons discussed below, the undersigned recommends that Plaintiffs' motion and Defendants' motion be **GRANTED IN PART and DENIED IN PART.**

The parties' motions for partial summary judgment ask the Court to determine how the False Claims Act's ("FCA") statute of limitations, 31 U.S.C. § 3731(b), is to be applied given the facts of this case. Plaintiffs argue that false claims accruing after May

25, 1979 may be pursued in this action. Defendants argue that only claims accruing after August 3, 1986 may be pursued in this action. For the reasons discussed below, the undersigned finds that only claims accruing after September 30, 1985 may be pursued in this action.

## I. INTRODUCTION

### A. RELEVANT PROCEDURAL HISTORY

The relevant procedural history is outlined in detail in the Tenth Circuit's opinion in *United States ex rel. The Precision Company v. Koch Industries, Inc.*, 31 F.3d 1015 (10th Cir.1994). The undersigned will, therefore, only summarize the facts pertinent to the current statute of limitations dispute.

The Precision Company ("Precision") is a corporation formed by the Plaintiffs, William I. Koch and William A. Presley. Messrs. Koch and Presley are the sole shareholders of Precision. Precision, as a *qui tam* relator, filed an FCA Complaint with this Court on May 25, 1989 in case number 89–CV–437–C.

On November 27, 1990, Judge H. Dale Cook dismissed the 1989 lawsuit filed by Precision. *See United States ex rel. Precision Company v. Koch Industries, Inc.*, 1990 WL 422422 (N.D.Okla. Nov. 27, 1990) (*Precision I*). Judge Cook held that the Court lacked subject matter jurisdiction under 31 U.S.C. § 3730(e)(4).[1] According to Judge Cook, the Court lacked subject matter jurisdiction because Precision could not qualify as an original source under § 3730(e)(4)(B) because Precision had not voluntarily provided all of its information to the government prior to filing a *qui tam* suit. *Id.*

Precision attacked the dismissal of *Precision I* on two fronts. First, Precision appealed the dismissal to the Tenth Circuit.

Second, Precision sought to cure the jurisdictional defect identified by Judge Cook by providing the government with additional information. Precision then filed a second *qui tam* action with this Court on September 30, 1991 (i.e., 10 months after Judge Cook dismissed *Precision I*). This second action, *Precision II*, is the case presently before the Court. The original complaint in this action was virtually identical to the complaint in *Precision I*.

This case lay dormant while the appeal of *Precision I* continued. The Tenth Circuit decided *Precision I* on July 27, 1992, almost 10 months after *Precision II* (i.e., this lawsuit) was filed. The Tenth Circuit affirmed the dismissal of *Precision I* for lack of subject matter jurisdiction, but on a ground different than that relied on by Judge Cook. The Tenth Circuit found that a majority of Precision's information had been gathered by its shareholders, Messrs. Koch and Presley, prior to Precision's formation. As to the information gathered by Precision after its formation, the Tenth Circuit found that information to be weak, informal and redundant of the information gathered by Messrs. Koch and Presley. *See United States ex rel. The Precision Company v. Koch Industries, Inc.*, 971 F.2d 548, 554 (10th Cir.1992). Based on these findings, the Tenth Circuit held that Precision could not qualify as an original source under § 3730(e)(4)(B) because it did not have direct and independent knowledge of the information on which the allegations in its *qui tam* complaint were based. *Id.*

Within a week of the publishing of the Tenth Circuit's decision affirming the dismissal of *Precision I*, an amended complaint was filed on August 3, 1992 in *Precision II* (i.e., this case). The amended complaint add-

---

1. Section 3730(e)(4) provides as follows:

    (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

    (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(A) & (B).

ed Messrs. Koch and Presley as the *qui tam* plaintiffs and dismissed Precision as the *qui tam* plaintiff. Again, the allegations in the amended complaint were identical to those in the original complaints filed in both *Precision I* and *Precision II.*

Defendants moved to dismiss Messrs. Koch and Presley as *qui tam* plaintiffs. Judge Thomas R. Brett granted the motion to dismiss, finding that Messrs. Koch and Presley had not properly amended the original complaint to add themselves as *qui tam* plaintiffs. *See* Doc. No. 37. Judge Brett's order was appealed to the Tenth Circuit and the Tenth Circuit reversed Judge Brett, finding that Messrs. Koch and Presley had been properly added as *qui tam* plaintiffs to this case. *See* Doc. No. 41, *United States ex rel. William I. Koch and William A. Presley v. Koch Industries, Inc.,* 31 F.3d 1015, 1016 (10th Cir.1994). Since 1994, this case has preceded with Messrs. Koch and Presley as proper *qui tam* relators.

### B. Legal Issues Presented

**1. Relation Back, Fed.R.Civ.P. 15(c)—Which Complaint Stopped the Statute of Limitations From Running as to the Claims Now Being Asserted by Plaintiffs William I. Koch and William A. Presley?**

Plaintiffs argue that the amended complaint adding them as *qui tam* plaintiffs to this lawsuit should relate back, under Fed. R.Civ.P. 15(c), to the complaint filed in *Precision I* (i.e., the complaint filed on May 25, 1989 and dismissed on November 27, 1990). In the alternative, Plaintiffs argue that the amended complaint in this case should relate back to the original complaint filed by Precision in this case on September 30, 1991. Defendants argue that there should be no relation back under Rule 15(c). The Court must, therefore, determine which complaint stopped the running of the statute of limitations as to the claims now being asserted by Plaintiffs William I. Koch and William A. Presley—the original complaint filed in *Precision I* in 1989, the original complaint filed in this action in 1991 (doc. no. 1), or the first amended complaint filed in this action in 1992 (doc. no. 26).

**2. Statute of Limitations, 31 U.S.C. § 3731(b)—What Limitations Period is Applicable in this Case?**

The FCA contains a specific statute of limitations, which provides as follows:

A civil action under section 3730 may not be brought—

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b). The legal dispute presented by the parties' motions is whether § 3731(b)(2) can apply to *qui tam* relators.

If § 3731(b)(2) is applied to *qui tam* relators, the parties also disagree as to who "the official of the United States charged with responsibility to act in the circumstances" is given the facts of this case—the Department of Justice, the Senate, the FBI or the Bureau of Land Management. Defendants argue that the relevant official in this case is the Bureau of Land Management. The Court must determine, therefore, which government official's knowledge triggers § 3731(b)(2)'s limitations period if § 3731(b)(2) applies in this case.

### II. RELATION BACK—Which Complaint Stopped the Statute of Limitations From Running as to the Claims Now Being Asserted by Plaintiffs William I. Koch and William A. Presley?

The relation back principles of the Federal Rules of Civil Procedure are found in Rule 15, which provides as follows:

(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c).

The law that provides the statute of limitations applicable to this action is the FCA's statute of limitations at 31 U.S.C. § 3731(b). Section 3731(b) contains no provisions dealing with the relation back of amendments to complaints stating *qui tam* claims. Thus, Rule 15(c)(1) is not applicable to this case.

There are three complaints relevant to the statute of limitations issues raised by the parties: the original complaint filed in *Precision I* in 1989, the original complaint filed in this action in 1991 (doc. no. 1) and the first amended complaint filed in this action in 1992 (doc. no. 26). The original complaint in *Precision I* and the original complaint in this case (i.e., *Precision II* ) are identical. The first amended complaint in this case changed the plaintiff from The Precision Company to its sole shareholders William I. Koch and William A. Presley. The first amended complaint in this case added no new claims against Defendants. Defendants' potential liability under all three complaints is identical. Thus, the claims stated in the original complaint in this case arise out of the same conduct, transactions, or occurrences set forth in the original complaint in *Precision I*

and the claims in the first amended complaint in this case arise out of the same conduct, transactions, or occurrences set forth in the original complaint filed in this case. Consequently, Rule 15(c)(2) poses no barrier to finding relation back in this case.

Rule 15(c) does not expressly deal with the relation back of amendments that change party plaintiffs. Rule 15(c)(3) applies to amendments that change "the party ... against whom a claim is asserted." Thus, by its own terms, Rule 15(c)(3) only applies to amendments adding or changing defendants. The Advisory Committee's notes to the 1966 amendments to Rule 15 make it clear, however, that even though the relation back of amendments adding or changing plaintiffs is not specifically dealt with in Rule 15, relation back of amendments changing plaintiffs is generally permissible. The Advisory Committee states as follows:

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and *the attitude* taken in revised Rule 15(c) toward change of defendants *extends by analogy* to amendments changing plaintiffs.

Fed.R.Civ.P. 15, Advisory Committee Notes, 28 U.S.C. (1966) (emphasis added).

Defendants read the Advisory Committee's note as requiring an amended pleading adding or changing a plaintiff to comply with all of Rule 15(c)(3)'s requirements in order for the amended pleading to relate back. Rule 15(c)(3) has the following requirements: (1) the amendment must comply with Rule 15(c)(2)'s same "conduct, transaction or occurrence" test, which is not an issue in this case; and (2) within 120 days of the filing of the original complaint, the party to be brought in by the amended complaint must have (A) received sufficient notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would

have been brought against the party to be brought in by the amendment.

Defendants argue that in this case Plaintiffs cannot establish a "mistake concerning the identity of the proper party." Defendants argue that the decision to bring *Precision I* and then the original complaint in this case in the name of The Precision Company, rather than in Messrs. Koch and Presley's name, was a conscious and deliberate act, designed to shield Messrs. Koch and Presley from personal liability and make the claim appear more legitimate. According to Defendants, the fact that Messrs. Koch and Presley had to be added as Plaintiffs, due to the Tenth Circuit's ruling in *Precision I* that Precision could not qualify as an original source, was the result of a conscious and deliberate decision by Plaintiffs, not the result of a mistake concerning the identity of the proper party. The undersigned does not agree with Defendants' analysis of the relation back issue presented by this case.

### A. WHAT STANDARD SHOULD BE USED TO DETERMINE WHETHER AN AMENDMENT ADDING OR CHANGING A PLAINTIFF RELATES BACK UNDER FED.R.CIV.P. 15?

■ The relation back of amendments is intimately connected with statute of limitations policy. Fed.R.Civ.P. 15, Advisory Committee Notes, 28 U.S.C. (1966). Statutes of limitation "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Statutes of limitation afford plaintiffs what the legislature deems a reasonable time to present their claims, and "they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Id.* Thus, at a minimum, a relation back rule must not undermine the policies underlying statutes of limitation in general–protecting defendants from stale claims by ensuring that defendants receive timely notice of a potential claim.

The Advisory Committee's 1966 note does not suggest that the explicit requirements in Rule 15(c)(3) must be applied to amendments that change or add plaintiffs. Rather, the note states that the "attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." The note is referring to an "attitude" that should be applied by analogy, and not to any specific requirements in Rule 15(c)(3) that should be applied by analogy. The "attitude" in Rule 15(c)(3) is to permit amendments to relate back when the amendment would not prejudice a defendant's right to defend claims brought against him. Thus, the Advisory Committee note only suggests that a relation back rule applied to amendments changing or adding plaintiffs should be designed, like Rule 15(c)(3), to ensure that a defendant's ability to defend on the merits is not prejudiced. *See* Clif J. Shapiro, *Amendments That Add Plaintiffs Under Federal Rule of Civil Procedure 15(c)*, 50 Geo. Wash.L.Rev. 671, 673 (1982).

In his article, Mr. Shapiro divides amendments adding plaintiffs into two categories, and applies a different relation back rule to each category. The first category of amendments are those where the new plaintiff asserts the same claim that was being asserted by the original plaintiff (i.e., the substituted plaintiff cases). The second category of amendments are those where the new plaintiff asserts claims different than the claims asserted by the original plaintiff (i.e., the added plaintiff cases). Mr. Shapiro argues that the "substituted plaintiff" category of amendments should always relate back. According to Mr. Shapiro, the "added plaintiff" category of amendments should relate back "only if the new claims arose from the same conduct, transaction, or occurrence the original plaintiff complained of and either the evidence required to defend against the new claims has not deteriorated due to the passage of time or the original [complaint] notified the defendant of a reasonable likelihood that an additional plaintiff would assert the claims." Clif J. Shapiro, *Amendments That Add Plaintiffs Under Federal Rule of Civil*

*Procedure 15(c)*, 50 Geo.Wash.L.Rev. 671, 673 (1982). The undersigned finds Mr. Shapiro's analytical model to be an accurate synthesis of the relevant case law and recommends that Mr. Shapiro's analytic model be applied in this case.

The undersigned finds that this case is a substituted plaintiff case, and the cases relied on by Defendants are added plaintiff cases. In the cases relied on by Defendants, the amendments at issue added new plaintiffs who were asserting new claims of their own. *See, e.g., Nelson v. County of Allegheny*, 60 F.3d 1010, 1014 (3rd Cir.1995). None of the cases relied on by Defendants involve the situation present here, where the new plaintiff is completely substituted for the original plaintiff and no new claims are added.

Defendants rely primarily on the Third Circuit's decision in *Nelson*. In *Nelson*, a group of women, anti-abortion protestors were arrested during a demonstration. Within two years of the arrest, four women filed a class action civil rights case on behalf of all women arrested during the demonstration. The district court refused to certify a class, leaving the four putative class representatives with their individual claims. Approximately three years after the denial of class certification, and after the two year statute of limitations had run, an amended complaint was filed to add as plaintiffs two additional women who had been arrested at the demonstration. The two new plaintiffs argued that the amended complaint adding them as plaintiffs should relate back, under Rule 15(c), to the filing of the original complaint by the four original plaintiffs. *Nelson*, 60 F.3d at 1011–12.

The district court refused to relate the complaint back, and dismissed the claims of the two new plaintiffs as barred by the statute of limitations. The two plaintiffs who sought to add themselves by amendment appealed the dismissal of their claims. The Third Circuit affirmed the dismissal, finding that the amended complaint adding the two

new plaintiffs did not relate back to the original complaint. The Third Circuit refused to relate the amended complaint back, finding that the two new plaintiffs had failed to demonstrate that the defendants knew or should have known that, but for a mistake, they would have been sued directly by these new plaintiffs. *Nelson*, 60 F.3d at 1015.

*Nelson* represents the "added plaintiff" category of plaintiff-changing amendments identified in Mr. Shapiro's article. In *Nelson*, the plaintiff-changing amendment added two new claims to the lawsuit, and accordingly increased the defendants' potential liability. The two new plaintiffs were not substituting themselves for the original plaintiffs. They were attempting to assert their own individual claims, not the claims of the four original plaintiffs. As Mr. Shapiro argued in his article, when new claims are asserted, defendants are entitled to more protection. The Third Circuit gave the defendants more protection in *Nelson* by requiring that the new plaintiffs demonstrate that at the time the original complaint was filed, the defendants knew or should have known of a reasonable likelihood that the new plaintiffs would assert claims against defendants.

The present case is distinguishable from *Nelson* and represents the "substituted plaintiff" category of plaintiff-changing amendments identified in Mr. Shapiro's article. In this case, the first amended complaint added no new claims against Defendants. Defendants' potential liability under the first amended complaint was identical to their potential liability under the original complaint in this case and the original complaint in *Precision I*. Such an amendment does not trigger a need for the type of additional protection provided in *Nelson* and identified by Mr. Shapiro for the "added plaintiff" category of plaintiff-changing amendments.[2]

The undersigned finds that, absent a showing of prejudice to the defendant, an amendment which substitutes one plaintiff or a

---

**2.** The other cases cited by Defendants are distinguishable on the same basis. They all represent the "added plaintiff" category of plaintiff-changing amendments. That is, in each case the new plaintiff sought to be added by amendment was asserting a new, personal claim. The new plaintiffs were not being substituted for the original plaintiff. *See, e.g., Ambraziunas v. Bank of Boulder*, 846 F.Supp. 1459, 1467 (D.Colo.1994).

group of plaintiffs for the original plaintiff or group of plaintiffs, with no corresponding change in the claims asserted against the defendant, will relate back under Rule 15(c), and no "mistake of identity" need be shown. Relation back under such circumstances does no violence to the principles underlying the relevant statute of limitations.

### B. THE FIRST AMENDED COMPLAINT IN THIS CASE RELATES BACK TO THE ORIGINAL COMPLAINT IN THIS CASE.

In an Order issued on October 6, 1995 dealing with the parties' subject matter jurisdictional arguments, the Court previously determined that the first amended complaint in this case relates back to the original complaint in this case. In its October 6th Order, the Court specifically held that "the amendment adding Mr. Koch and Mr. Presley relates back to the date the original Complaint was filed...." Doc. No. 99, pp. 17–18. Defendants have offered no convincing reason why the Court's prior determination should be disturbed.

The original complaint in this case put Defendants on notice of the FCA claims asserted in that complaint. The first amended complaint changed the plaintiff from The Precision Company to its sole shareholders, William I. Koch and William A. Presley. The first amended complaint added no new claims against Defendants. Because the first amended complaint does not raise any notice concerns, the undersigned finds that the polices underlying statutes of limitation, like the FCA's statute of limitations, would not be undermined if the first amended complaint in this case were related back to the original complaint in this case.[3]

---

3. *See* 6A Wright & Miller, *Federal Practice and Procedure: Civil* § 1501 (2d ed.1990) (recognizing that "[a]s long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense."). *See also Staren v. American Nat'l Bank and Trust Co. of Chicago,* 529 F.2d 1257, 1262–63 (7th Cir. 1976) (allowing amendment substituting corporation for shareholders to relate back where no additional claims were added by the amendment); and *Arthur v. Schurek,* 139 B.R. 512, 515

Defendants have not attempted to demonstrate that permitting the first amended complaint to relate back to the original complaint would in any way prejudice their ability to defend this case. With the original complaint, Defendants were put on notice of the claims being asserted against them. Defendants were able, therefore, to begin preserving any evidence that would be needed to defend the claims. There is, therefore, no danger that because Defendants lacked notice of certain claims, evidence needed for a defense on those claims deteriorated between the time the original complaint in this case was filed and the time the first amended complaint was filed. *See, e.g., Allied Int'l v. Int'l Longshoreman's Ass'n,* 814 F.2d 32, 37 (1st Cir.1987) (finding no prejudice from substitution of new plaintiff because "defendants were on notice of the full extent of their liability from the earliest stages of the litigation.").

### C. THE FIRST AMENDED COMPLAINT IN THIS CASE DOES NOT RELATE BACK TO THE COMPLAINT FILED IN THE *PRECISION I* CASE.

#### 1. Tenth Circuit Precedent.

Plaintiffs argue that under Fed.R.Civ.P. 15(c), they should be permitted to relate the amended complaint in this 1991 case back to the filing of the 1989 complaint in *Precision I.*[4] Plaintiffs' argument is, however, foreclosed by Tenth Circuit precedent. Rule 15(c)'s amendment principles only operate within the bounds of a single civil action. Rule 15(c) does not permit a complaint filed in one civil action to relate back to a complaint filed in a separate civil action.

(Bankr.S.D.Ca.1992) (allowing amendment in an adversary proceeding to relate back where the amendment substituted Chapter 7 trustee as plaintiff for the original creditor without adding any additional claims).

4. Plaintiffs' argument is notably inconsistent with the original complaint filed in this action by The Precision Company. In the original complaint, Precision argued for a statute of limitations that ran from the filing of the complaint in this case, and not from the filing of the complaint in *Precision I.* Doc. No. 1, ¶¶ 47 and 48.

In *Benge v. United States,* 17 F.3d 1286 (10th Cir.1994), the plaintiff filed a timely action against the United States pursuant to the Federal Tort Claims Act (*Benge I*). *Benge I* was dismissed due to plaintiff's failure to obtain proper service. The plaintiff then filed a second FTCA action which was dismissed as untimely (*Benge II*). The plaintiff appealed *Benge II,* arguing that *Benge II* was timely filed because the complaint in *Benge II* should be related back to the complaint in *Benge I.* Citing Rule 15, the Tenth Circuit disagreed, holding that "a separately filed claim, as opposed to an amendment or a supplementary pleading, does not relate back to a previously filed claim." *Id.* at 1288.

Plaintiffs attempt to distinguish the Tenth Circuit's holding in *Benge II* by pointing out that the *Benge I* lawsuit was dismissed for lack of service. Despite the fact that the Tenth Circuit's holding is unqualified, Plaintiffs argue that the Tenth Circuit's true holding in *Benge II* is that because the defendant did not receive notice in *Benge I,* it would have violated statute of limitations principles to permit the *Benge II* complaint to relate back to the *Benge I* complaint. Plaintiffs argue that the *Benge II* holding should not apply in this case because, unlike the defendants in *Benge I.,* Defendants in this case received proper notice of *Precision I.* Plaintiffs' purported distinction of *Benge II* is, however, not supported by post-*Benge II* authority.

In *Wright v. United States,* No. 94–7117, 1995 WL 12025 (10th Cir. Jan. 12, 1995), the plaintiff filed a timely FTCA action against the United States (*Wright I*). The plaintiff and the defendants then filed a joint stipulation of dismissal without prejudice, and *Wright I* was dismissed without prejudice. The plaintiff then filed a second action identical to *Wright I* (*Wright II*). The defendant filed a motion for summary judgment, arguing that *Wright II* was untimely. The plaintiff responded by arguing that *Wright II* was timely filed because the complaint in *Wright II* related back to the complaint in *Wright I.* Citing Rule 15 and *Benge II,* the district court dismissed *Wright II,* finding that the complaint in *Wright II* could not relate back to the complaint in *Wright I.*

The dismissal of *Wright II* was appealed, and the Tenth Circuit summarily affirmed the district court's reliance on *Benge II* to dismiss *Wright II* as untimely. *Wright II,* 1995 WL 12025, at *2. Thus, the Tenth Circuit applied its *Benge II* holding despite the fact that in *Wright I* the defendant obviously had notice of the claims being asserted in *Wright I,* as did the Defendants in this case. *See also, Farlaino v. United States,* No. 95–4165, 1997 WL 139768, *4 (10th Cir. Mar. 25, 1997). The undersigned finds, therefore, that the Tenth Circuit's holding in *Benge II* must be applied in this case.

In support of their relation back argument, Plaintiffs rely primarily on *Bailey.* In *Bailey,* the plaintiff filed two Title VII employment discrimination cases. When confronted with a statute of limitations challenge in the second case, Plaintiff argued that the second case was timely because it should be related back to the first case pursuant to Rule 15(c). The Seventh Circuit rejected Plaintiff's argument holding that "Rule 15(c), by its own terms, only applies to amended pleadings in the same action as the original, timely pleading." *Bailey,* 910 F.2d at 412–13.

Plaintiffs focus on footnote 9 in the Seventh Circuit's opinion in *Bailey.* Plaintiffs argue that the *Bailey* court's decision is based on the fact that the claims in Mr. Bailey's first Title VII lawsuit would not have put the defendants on notice of the claims raised in the second lawsuit. The undersigned does not agree with Plaintiffs that footnote 9 in the *Bailey* opinion is a qualification of the court's more general holding made in the text of the opinion. The Seventh Circuit is in agreement with the Eighth and Tenth circuits that Rule 15(c) operates within the context of one civil action and does not operate between separate civil actions. In any event, the holding which Plaintiffs ascribe to the *Bailey* opinion would be inconsistent with the Tenth Circuit precedent discussed above.

**2. The Language of Fed.R.Civ.P. 15(c).**

Plaintiffs' argument is also not consistent with the plain language of Fed.R.Civ.P. 15(c).

The plain language of Rule 15(c) establishes that the rule only applies to the filing of an amendment stating a claim which "arose out of the conduct . . . set forth . . . in the *original pleading*," and that the amendment can only relate "back to the date of the *original pleading* . . . ." Fed.R.Civ.P. 15(c) (emphasis added). The first amended complaint filed in this case in 1992 cannot plausibly be construed as an amendment to the already dismissed complaint in *Precision I* without altering the plain meaning of Rule 15(c). *See Morgan Distributing Co., Inc. v. Unidynamic Corporation*, 868 F.2d 992, 994 (8th Cir. 1989); *Reynolds v. S & D Foods, Inc.*, No. 91–1442–PFK, 1993 WL 95678, at *2 (D.Kan. Mar. 23, 1993); and *Bailey v. Northern Indiana Public Service Co.*, 910 F.2d 406, 412–13 (7th Cir.1990).

Plaintiffs also argue that by refusing to relate the complaint in this case back to the complaint filed in *Precision I*, the Court would not be acting consistent with Rule 15's liberal amendment policy. It is true that Rule 15(a) states that leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). There is, however, no similar language in Rule 15(c). While permission to amend a complaint is to be freely given, there is nothing in Rule 15 to indicate that courts must also freely relate complaints back. As the comments to Rule 15(c) state, the chief policy consideration at stake in relation back decisions is the statute of limitations. Consequently, a liberal approach to relation back decisions would do violence to the expectation-settling and conduct-ordering policies behind statutes of limitation.

### 3. Effect of Prior Dismissal Without Prejudice.

*Precision I* was dismissed by Judge Cook for lack of subject matter jurisdiction. *Precision I*, 1990 WL 422422 at *3. The Tenth Circuit affirmed the dismissal for lack of subject matter jurisdiction on a different ground. *Precision I*, 971 F.2d at 554. A dismissal for lack of subject matter jurisdiction is a dismissal without prejudice (i.e., a dismissal not on the merits). Fed.R.Civ.P. 41(b).

Absent a savings statute[5] which specifically permits a plaintiff to re-file an action within a specified period of time after a dismissal not on the merits, a dismissal without prejudice leaves the situation the same as if the action dismissed without prejudice had never been filed. *Precision I* stated a claim under the FCA—a federal claim—and there is no federal savings statute. As a result, Plaintiffs receive no credit or tolling for the time that elapsed during the pendency of *Precision I*.[6]

Defendants argue that a complaint can never be related back to a complaint over which the court lacked subject matter jurisdiction. The undersigned rejects Defendants' arguments, and instead relies on the authorities cited above. A complaint cannot be related back to a complaint over which the

---

5. *See, e.g.*, 12 Okla.Stat. § 100.

6. *See Brown v. Hartshorne Public School Dist. # 1*, 926 F.2d 959, 961 (10th Cir.1991) ("It is hornbook law that, as a general rule, a voluntary dismissal without prejudice leaves the parties as though the action had never been brought. . . . In the absence of a statute to the contrary, the limitation period is not tolled during the pendency of the dismissed action."); *Simons v. Southwest Petro–Chem, Inc.*, 28 F.3d 1029, 1030–31 (10th Cir.1994) (same); *Robinson v. Willow Glen Academy*, 895 F.2d 1168, 1169 (7th Cir. 1990); *Spannaus v. United States Dept. of Justice*, 643 F.Supp. 698, 703 (D.D.C.1986), *aff'd*, 824 F.2d 52 (D.C.Cir.1987) ("the dismissal without prejudice did not affect the running of the statute [of limitations]"); *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27–28 (6th Cir.1987) (without statute to contrary, party cannot deduct from period of limitations time during which action, later dismissed without prejudice for failure to perfect service, was pending); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 33–34 (11th Cir.1982) (dismissal of suit without prejudice does not authorize later suit brought outside otherwise binding limitation period); *Ford v. Sharp*, 758 F.2d 1018, 1023 (5th Cir.1985); *Humphreys v. United States*, 272 F.2d 411, 412 (9th Cir.1959); *Parker v. Marcotte*, 975 F.Supp. 1266, 1269 (C.D.Cal. 1997); and 8 James Wm. Moore, et al., *Moore's Federal Practice* § 41.50(7)(b) (3d ed. 1997) ("When the district court elects to dismiss an action without prejudice under Rule 41(b), the dismissal leaves the parties in the same legal position as if no suit had been filed. As a consequence, the statute of limitations is not tolled by the filing of the original suit."); 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2367 at 186 (1971).

court lacked subject matter jurisdiction, not because the court lacked subject matter jurisdiction, but because the law deems the first suit to have never in fact existed. It would, therefore, be impossible to relate a complaint filed in *Precision II* back to *Precision I* which, because it was dismissed without prejudice, is deemed to never have existed.

### D. CONCLUSION

The undersigned recommends that the First Amended Complaint filed in this case be related back to the original complaint filed in this case, but not to the original complaint filed in the *Precision I* action. Thus, as to the claims now being asserted by William I. Koch and William A, Presley, the applicable statute of limitations was tolled on September 30, 1991 by the filing of the original complaint in this case.[7]

### III. WHICH LIMITATIONS PERIOD IN 31 U.S.C. § 3731(b) IS APPLICABLE TO THIS CASE?

The FCA contains a specific statute of limitations which states:

A civil action under section 3730 may not be brought—

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been

known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b).

Section 3731(b)(2) has been subject to two different interpretations by the courts that have addressed it. First, some courts hold that § 3731(b)(2)'s tolling provision only applies to an FCA action brought by the government, and it does not apply to *qui tam* relators like Plaintiffs—relators are simply limited to the limitations period in § 3731(b)(1).[8] Second, some courts apply § 3731(b)(2)'s tolling provision to *qui tam* relators, and they also find that the knowledge that triggers § 3731(b)(2)'s three year limitations period is that of either the *qui tam* relator or government.[9] Plaintiffs argue for a third interpretation—that § 3731(b)(2) applies to *qui tam* relators, but the only knowledge that triggers its three year limitation period is the government's knowledge. The Court must, therefore, determine whether, and how, § 3731(b)(2) will be applied in this case.

### A. LANGUAGE USED IN § 3731(B)—THE FCA's STATUTE OF LIMITATIONS

Courts finding that § 3731(b)(2) does not apply to *qui tam* relators and court's finding

---

7. Plaintiffs filed a Second Amended Complaint on October 29, 1998. [Doc. No. 414]. The Second Amended Complaint alleged three new specific violations of the FCA: (1) disguising a 2¢/gallon marketing fee as an allowable fractionation fee, (2) improperly deducting $1.65/barrel from the price paid for natural gasoline, and (3) improperly imposing a $2.24/barrel trucking charge on condensate. *See* Second Amended Complaint, Doc. No. 441, ¶¶ 56(c)–(e). Because the briefing on the parties' cross-motions for summary judgment was completed in September 1998, before the filing of the Second Amended Complaint, none of the parties have addressed whether the Second Amended Complaint relates back to the original complaint filed in this action. The parties do agree, however, that the only additional relation-back issue presented by the Second Amended Complaint, which is not already addressed in the motions directed to the First Amended Complaint, is whether the allegations in ¶¶ 56(c)–(e) arise out of the same transaction or occurrence set forth in the original and

first amended complaints. Defendants will file a separate motion to dismiss raising any statute of limitations defenses it has in connection with the allegations in ¶¶ 56(c)–(e) of the Second Amended Complaint.

8. *See United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 6 F.Supp.2d 263 (S.D.N.Y.1998); *United States ex rel. El Amin v. George Washington Univ.*, 26 F.Supp.2d 162 (D.D.C.1998); and *Hyatt v. Northrop Corp.*, 883 F.Supp. 484 (C.D.Cal.1995) (*Hyatt I*), aff'd on different reasoning by, 91 F.3d 1211 (9th Cir. 1996).

9. *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir.1996) (*Hyatt II*); *United States ex rel. Saaf v. Lehman Brothers*, 123 F.3d 1307 (9th Cir.1997) (summarily applying the holding in *Hyatt II*); and *United States ex rel. Sanders v. East Alabama Healthcare Authority*, 953 F.Supp. 1404 (M.D.Ala.1996).

that § 3731(b)(2) does apply to *qui tam* relators both rely on the "plain language" of § 3731(b)(2). Those courts applying § 3731(b)(2) to *qui tam* relators rely on the first sentence of § 3731, which provides as follows: "A civil action under section 3730 may not be brought [more than the number of years stated in § 3731(a) or (b)]." Section 3730 is that portion of the FCA which defines in subsection (a) when the Attorney General may bring an FCA action on behalf of the United States, and in subsection (b) when private *qui tam* relators may bring an FCA action on behalf of the United States. Because the first sentence of § 3731 refers without any qualification to civil actions under § 3730, and because § 3730 refers to FCA actions brought by both the government and private relators, some courts find that both of § 3731's subsections, including subsection (b)(2), must be applicable to *qui tam* relators.

Those courts refusing to apply § 3731(b)(2) to *qui tam* relators rely on the specific language of subsection (b)(2), which provides as follows: An FCA action may not be brought "more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances...." Section 3731(b)(2) refers to an "official of the United States," and *qui tam* relators cannot plausibly be viewed as officials of the United States.[10] Relators are also not "charged with responsibility to act." Rather, they act out of their own personal motivation. Thus, courts relying on subsection (b)(2)'s language find that subsection (b)(2) refers only to the government, and nothing in subsection (b)(2)'s language suggests that it is intended to apply to *qui tam* relators.

The language of § 3731 is not a model of clarity. Section § 3731's "plain language" can be construed in favor or against applying § 3731(b)(2) to *qui tam* relators. The undersigned finds, therefore, that the language of § 3731 is inconclusive.

### B. LEGISLATIVE HISTORY OF § 3731(b)(2)

The Senate Report drafted in support of the 1986 amendments to the FCA, which added subsection (b)(2) to § 3731, states as follows:

> [T]he subcommittee added a modification of the statute of limitations to permit *the Government* to bring an action within 6 years of when the false claim is submitted (current standard) or within 3 years of when *the Government* learned of a violation, whichever is later. The subcommittee agreed that because fraud is, by nature, deceptive, such tolling of the statute of limitations is necessary to ensure *the Government's* rights are not lost through a wrongdoer's successful deception.

S.Rep. No. 345, 99th Cong., 2d Sess., 15 (July 28, 1986), *reprinted in* 1986 U.S.C.C.A.N. 5266 (emphasis added).

> Subsection (b) of section 3731 of title 31, as amended by section 3 of the bill, would include an explicit tolling provision on the statute of limitations under the False Claims Act. The statute of limitations does not begin to run until the material facts are known by *an official within the Department of Justice with the authority to act* in the circumstances.

*Id.* at 30 (emphasis added).

The House Report drafted in support of the 1986 amendments to the FCA, which

---

**10.** The constitutionality of the FCA's *qui tam* provisions has been challenged on many fronts by FCA defendants. One line of attack has been that the FCA's *qui tam* provisions violate the Appointments Clause. *See* U.S. Const. Art. II, Sec. 2, cl. 2. The Appointments Clause states that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and *all other Officers of the United States*, whose Ap-

pointments are not herein otherwise provided for, and which shall be established by Law." *Id.* (emphasis added). Courts have rejected appointments clause challenges, holding that *qui tam* relators are not officers of the United States. *See, e.g., United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 757–58 (9th Cir.1993); *United States ex rel. Taxpayers Against Fraud v. General Electric Co.*, 41 F.3d 1032, 1041–42 (6th Cir.1994); and *United States ex rel. Colunga v. Hercules, Inc.*, No. 89–CV–954 B, 1998 WL 310481, at *2–5 (D.Ut. Mar. 6, 1998).

added subsection (b)(2) to § 3731 states as follows:

> [The amendment] expands the statute of limitations in the False Claims Act. Under current law, the statute of limitations is to be not more than six years after the date of the occurrence of the violation. [The amendment] provides that the statute of limitations shall be not more than six years (as provided by current law), nor more than three years after the date when the material facts of the violation are known or should have been known by *the official of the United States with responsibility to act,* but no action may be brought more than 10 years after the occurrence of the violation.
>
> It was brought to the attention of the Committee that fraud is often difficult to detect and that the statute of limitations should not preclude *the Government* from bringing a cause of action under this Act if they were not aware of the fraud. The Committee agreed that this was unfair and so expanded the statute of limitations. However, the Committee did not intend to allow *the Government* to bring fraud actions *ad infintum* [sic], and therefore imposed the strict 10 year limit on False Claims Act cases.

H.Rep. No. 660, 99th Cong., 2d Sess., 25 (June 26, 1986) (emphasis added).

Defendants argue that the Legislative history of § 3731(b)(2) establishes that it was only intended to apply to FCA actions being pursued by the government. As with the language actually used by Congress in § 3731(b)(2), the undersigned finds the legislative history from both houses of Congress is also inconclusive.

The plain language of the legislative history certainly suggests the § 3731(b)(2) is only to be applied to FCA actions brought by the government. However, there are many instances in the legislative history of the 1986 amendments to the FCA, where both the Senate and the House of Representatives use the word "Government" as a shorthand to refer to both the United States and a private *qui tam* relator. For example, the House Report discusses the amendment to § 3729 which recognized the validity of reverse false claims. H.Rep. 99–660, at 20. The Report states as follows: "Another amendment to the current law ... allows the Government to prosecute a false claim which has been filed for the purpose of reducing the amount the claimant owes to the Government." *Id.* No one can seriously believe that by using the phrase "allows the Government" Congress intended that only the Government, and not a *qui tam* relator, can prosecute a reverse false claim. As it did throughout the legislative history to the 1986 amendments, Congress simply used the word "Government" as a shorthand reference to mean the Government and/or a private relator.

**C. PLAINTIFFS CANNOT BENEFIT FROM § 3731(B)(2)'S EXTENDED LIMITATIONS PERIOD UNDER EITHER OF THE ONLY TWO PLAUSIBLE INTERPRETATIONS OF § 3731.**

The undersigned finds that the Court need not decide whether § 3731 does or does not apply to *qui tam* relators. The undersigned finds that either (1) § 3731(b)(2) does not apply to *qui tam* relators, or (2) § 3731(b)(2) applies to *qui tam* relators, but the relator's, as well as the government's, knowledge triggers § 3731(b)(2)'s three-year limitations period, and Plaintiffs had the relevant knowledge more than three years before this action was filed. Under either holding, Plaintiffs cannot benefit from § 3731(b)(2)'s extended statute of limitations, and must rely only on § 3731(b)(1)'s general six-year limitations period. The undersigned finds no support for Plaintiffs' argument that if § 3731(b)(2) applies to *qui tam* relators, only the government's, and not the relator's knowledge, triggers § 3731(b)(2)'s three-year limitations period.

**1. If § 3731(b)(2) Applies to Relators, the Relators' Knowledge is Sufficient to Trigger § 3731(b)(2)'s Three–Year Limitations Period.**

If § 3731(b)(2) is to be applied to *qui tam* relators, it must be applied in a manner consistent with the purposes of the FCA. Despite its lack of clarity on other issues, there is at least one point on which the

legislative history of the 1986 amendments to the FCA is clear. The main purpose behind the *qui tam* provisions of the FCA is to encourage private individuals, who are aware of fraud being perpetrated against the Government, to bring their information forward. S.Rep. 99–345, at 2 and 30; H.Rep. 99–660, at 23. Thus, nothing in the FCA should be construed in such a way as to create any incentive for *qui tam* relators to hold on to information evidencing fraud rather than promptly disclosing that information to the government.

The undersigned finds that if § 3731(b)(2) is applied to *qui tam* relators, without any consideration of the relator's knowledge, § 3731(b)(2) would create at least some incentive for relators to hold on to information evidencing fraud rather than disclosing that information to the government. If a relator's knowledge is not itself sufficient to trigger § 3731(b)(2)'s three-year limitations period, relators would likely hold on to their information longer than they otherwise would so that the three-year limitations period in § 3731(b)(2) would not be triggered by their own disclosure to the government. For example, hoping to increase his recovery, a relator who knows about FCA violations soon after they begin occurring, could wait just under 10 years before notifying the government, and then still file an FCA claim as a relator.[11] Such a result could not have been intended by Congress. It is also unlikely that Congress would have intended to permit relators to control the running of § 3731(b)(2)'s limitations period in this manner. *See Hyatt,* 91 F.3d at 1218;[12] *Saaf,* 123 F.3d at 1308; *El Amin,* 26 F.Supp.2d at 173; *Sanders,* 953 F.Supp. at 1412–13; and *Hyatt,* 883 F.Supp. at 487–88.

Plaintiffs argue that the possibility that § 3731(b)(2) might cause a relator to hold on to information rather than disclose it to the government is a "theoretical," but not a "practical" concern. Plaintiffs argue that the danger of delay created by § 3731(b)(2) is offset by the fact that a relator who waits too long to disclose his information to the government and file suit might find himself (1) barred by the FCA's first to file rule, should another relator file an action during the delay; or (2) having to clear the FCA's "original source" jurisdictional hurdle because the information possessed by the relator has been publicly disclosed during the delay. *See* 31 U.S.C. §§ 3730(b)(5) and 3730(e)(4)(B).

Plaintiffs may be correct that a relator may not wait the full ten years to disclose his information to the government, but the undersigned is convinced that Plaintiffs' interpretation of § 3731(b)(2) would create enough of an incentive that a significant number of relators would wait longer than they otherwise would to make disclosure to the government. Plaintiffs' argument would also be more convincing if there was anything in either the language of the FCA or its legislative history which demonstrated that Congress engaged in the type of weighing of risks that Plaintiffs' argument suggests. There is, however, nothing to suggest that Congress weighed the danger of delay caused by Plaintiffs' interpretation of § 3731(b)(2) and found the risk of delay acceptable in light of the first to file and original source provisions in the FCA. Without such an analysis, which must be conducted by Congress, and not this Court, the undersigned cannot, consistent with the purposes expressly stated by Congress in the FCA's

---

**11.** Such a delay would be detrimental to the government, who has an interest in stopping fraud being committed against it as soon as possible. The relator's delay may also prevent the government from criminally prosecuting the defendant. *See, e.g.,* 18 U.S.C. §§ 287 and 3282, which impose a five year statute of limitations for criminal prosecution of persons who deliberately submit false claims to the armed forces. The incentive to delay created by Plaintiffs' interpretation of § 3731(b)(1) could also expose the relator to prosecution for misprision of a felony. *See* 18 U.S.C. § 4 (making criminal the failure to

make known to the government as soon as possible that a felony has been committed).

**12.** Plaintiffs argue that the Ninth Circuit's opinion in this case was vacated by the Supreme Court. Doc. No. 304, p. 14. Plaintiffs are wrong. The Supreme Court vacated another decision in a different action between the same parties. *See United States ex rel. Hyatt v. Northrop Corp.,* 80 F.3d 1425 (1996), *vacated by* 521 U.S. 1101, 117 S.Ct. 2476, 138 L.Ed.2d 986 (1997) (dealing with the retroactivity of amendments to the FCA's jurisdictional provisions).

legislative history (i.e., prompt disclosure to the government), find that § 3731(b)(2) should be interpreted in any way that would create any incentive for delaying disclosure to the government.

If § 3731(b)(2) applies to *qui tam* relators, it applies in part because Congress, as demonstrated in the legislative history, must have meant for the word government to be a short hand reference referring to the government and *qui tam* relators. Thus, the use of the word government in § 3731(b)(2) must be understood as a reference to *qui tam* relators as well. It is, therefore, not unreasonable to conclude that if Plaintiffs are able to benefit from § 3731(b)(2)'s extended limitations period, Plaintiffs must also be bound by the conditions in § 3731(b)(2). The undersigned finds, therefore, that if § 3731(b)(2) is to be applied to *qui tam* relators, either the relator's or the government's knowledge may trigger § 3731(b)(2)'s three-year statute of limitations.

Plaintiffs argue that by finding that the relator's knowledge is relevant, a relator could cause the government to lose its right to litigate an FCA claim altogether. Plaintiffs advance the following scenario: (1) A relator obtains facts material to an FCA claim, (2) the government is unaware of these facts, (3) the relator waits more than three years after obtaining the facts to file an FCA claim, and (4) the FCA claim is then dismissed as time barred. Plaintiffs believe that under this scenario, the government will have been prejudiced by the relator's delay because the government will have lost the right to bring an FCA claim on the same facts. Presumably, Plaintiffs believe that this result could not have been intended by Congress.

If in Plaintiffs' scenario, the government, after its statutorily-provided review period,[13] determined to let the relator proceed on its behalf, as the government did in this case, then the government should, for all the reasons discussed above, be bound by the relator's knowledge as well as its own knowledge

for purposes of § 3731(b)(2). What is not clear, however, is whether the government would be bound by the relator's knowledge if it chose to take over the case and prosecute the FCA claim on its own. *See* 31 U.S.C. § 3730(b)(2)–(4). The FCA specifically states that "[i]f the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." *Id.* at § 3730(c)(1). This section suggests that in an action being prosecuted by the government, the government would not be bound by the relator's knowledge for purposes of § 3731(b)(2). The government could, therefore, theoretically protect itself from the prejudice identified in Plaintiffs' scenario by taking over the prosecution of an FCA claim brought by a relator who delayed disclosing information to the government. Thus, the real issue raised by Plaintiffs' scenario, which has yet to be squarely addressed by the courts, is to what degree can a relator's actions or inaction, prior to the time the government agrees to let the relator proceed with prosecution of an FCA claim, prejudice the government. The Court need not, however, resolve all potential scenarios, especially when the scenario is based on a factual situation not present in this case.

Plaintiffs also argue that it is unfair to use the relator's knowledge as a trigger for § 3731(b)(2) because private individuals often do not have the same investigative resources as the government. Plaintiffs' argument is based on a faulty premise. Congress' underlying reason for authorizing *qui tam* suits was its finding, reached after extensive hearings, that private individuals should be recruited to help the government combat fraud because the government lacked sufficient resources to investigate and prosecute the fraud committed against the government every year. Thus, if a private individual lacks sufficient resources to investigate and fully develop an FCA claim, that person should not be serving as a *qui tam* relator in the first place, because he cannot provide the

---

**13.** To file an FCA claim, a relator must first file his complaint under seal and serve a copy only on the government. The government then has 60 days to decide whether to take over the case

itself or to permit the *qui tam* relator to prosecute the case on behalf of the government. *See* 31 U.S.C. § 3730(b)(2) and (3).

type of assistance Congress expected from *qui tam* relators who will ultimately obtain a share of the government's recovery. In fact, the undersigned is hard-pressed to understand how a private party could satisfy Fed. R.Civ.P. 11 and file a *qui tam* complaint establishing him as a relator if he in fact lacked sufficient resources to investigate the FCA claim.

### a. Plaintiffs' Cases

Plaintiffs rely on *Colunga, Kreindler* and *Stevens*[14] as support for their argument that only the government's, and not the relator's knowledge, can trigger § 3731(b)(2)'s three-year statute of limitations. For the reasons discussed below, the undersigned finds none of these cases persuasive.

In *Kreindler,* the court applied § 3731(b)(2) by looking at the level of the government's knowledge, without discussing the level of the relator's knowledge. The court assumed, without discussing, that the government's knowledge was the relevant knowledge for purpose of § 3731(b)(2). The reasons for this are clear from a review of the facts in that case. The relator was a law firm that had previously represented a plaintiff in a wrongful death case, where the plaintiff's husband had been killed in an army helicopter crash. During the wrongful death litigation, which was pending from 1982 to 1987, the law firm learned facts suggesting that the manufacturer who sold the helicopter to the army had defrauded the army. The law firm then field an FCA action against the manufacturer. The FCA case was dismissed as untimely because the court found that the government had knowledge of the facts underlying the FCA claim since 1979. Because the case was barred by the government's prior knowledge, there was no need for the court to discuss the relevance of the relator's knowledge. *Kreindler* is, therefore, inapposite. *Kreindler,* 777 F.Supp. at 197, and 204–205.

*Stevens* does not address the issue presented by the parties' motions at all. The relator argued that his claim was timely under § 3731(b)(2), but there was no discussion of whether the claim was timely because of the government's lack of knowledge or the relator's lack of knowledge or both. In any event, the court denied defendant's motion for summary judgment on other grounds. The court denied summary judgment because the defendants had not carried their summary judgment burden, and had not addressed several relevant statute of limitations issues. *Stevens,* 1996 U.S.Dist. LEXIS 22109, at *46–48. *Stevens* is, therefore, also inapposite.

*Colunga* is the only case that seems to squarely support Plaintiffs' position that in a *qui tam* case, the government's, and not the relator's, knowledge is relevant for purposes of § 3731(b)(2). In *Colunga,* the court relied on (1) the plain language of the statute, without discussing the first sentence of § 3731; (2) the legislative history, without discussing that history's use of the word government in other contexts; and (3) the same type of the scenario presented by Plaintiffs that was discussed above. *Colunga,* 1998 WL 310481, at *3–5. As discussed above, the undersigned finds that each of the reasons offered by the court in *Colunga* for its holding are either inapposite (i.e., supportive of either position) or contrary to Congress' intent to use the FCA's *qui tam* provisions to promote prompt disclosure of information of fraud to the government.

### b. Plaintiff's Knowledge

The undersigned has found that § 3731(b)(2) is applicable to *qui tam* actions, either the relator's or the government's knowledge will trigger § 3731(b)(2)'s three-year statute of limitations. The Court must, therefore, decide if Plaintiffs knew or reasonably should have known of "facts material to [this] action" more than three years prior to the filing of this action on September 30, 1991. That is, did Plaintiffs know or should they have known of "facts material to [this] action" before September 31, 1988?

14. *See United States ex rel. Colunga v. Hercules,* No. 89–CV–954, 1998 WL 310481 (D.Ut. Mar. 6, 1998); *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,* 777 F.Supp. 195 (N.D.N.Y.1991); and *United States re rel. Stevens v. McGinnis, Inc.,* No. C–1–93–442, 1996 U.S.Dist. LEXIS 22109 (S.D.Ohio Feb. 16, 1996).

The undersigned finds that to trigger § 3731(b)(2)'s three-year limitations period, it is not necessary for Plaintiffs to have had knowledge of all details concerning the claims alleged in this lawsuit. Rather, the limitations period in § 3731(b)(2) began to run once the facts making up the "very essence of the right of action" were reasonably knowable to Plaintiffs. *United States v. Kass*, 740 F.2d 1493, 1497 (11th Cir.1984), cited with approval by, *Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 862 (10th Cir. 1993);[15] *United States ex rel. Zissler v. Regents of the Univ. of Minn.*, 992 F.Supp. 1097, 1107 (D.Minn.1998). In this case, the relevant facts would be those that informed Plaintiffs that Defendants were under-reporting the amount of oil and gas they were purchasing. The precise amount of that under-reporting need not have been known because a party should not be permitted to delay filing suit until he knows the exact dollar amount of his damages. *United States v. Gavilan Joint Community College District*, 849 F.2d 1246, 1249 (9th Cir.1988).

Based on the summary judgment record before the Court, the undersigned finds the following facts are undisputed:

1. William I. Koch was an executive in Defendants' organization from 1963 to 1983, and he owned approximately 20% of Defendants' stock. From 1973 to 1981, Mr. Koch was a member of Defendants' board of directors and he regularly attended board meetings.

2. Between 1981 and 1984, William I. Koch was told by current and ex-employees that Defendants' were engaging in fraudulent measurement practices, which caused Defendants' to consistently come out long (i.e., with more oil than had been paid for). During this period Mr. Koch spoke with Paul Vickery (an ex-product trader for Defendants), Robert Vickery (repeating what he had heard from an ex-gauger of Defendants he had hired), Jack Thornton, Roger Williams, Tom Gargas and Gail Laird (an ex-executive of Defendants).

3. In 1983, Mr. Koch began an investigation of Defendants, but the investigation was stopped shortly after it began.

4. Also between 1981 and 1983, Mr. Koch came to believe that:

   a. Defendants had established a school to train its gaugers to "cheat" producers by using a gauging method and by calibrating gauging tools to insure overages (i.e., the taking of more oil than was paid for) for Defendants;

   b. Defendants did in fact have significant overages (from ½ to 6%) due to the gauging practices of Defendants' gaugers; and

   c. Defendants had developed a policy to use these overages as a profit center.

5. In 1987, Mr. Koch spoke again with Roger Williams, an ex-employee of Defendants. Mr. Williams told Mr. Koch about Defendants' "aggressive" measurement practices. These practices included unjustified adjustments being made to bs & w measurements and temperature measurements by Defendants' gaugers. Mr. Williams was personally involved in these practices, which Mr. Koch believed were "highly illegal."

15. Both of these cases were actually interpreting language in 28 U.S.C. § 2416(c). In the absence of a more specific statute of limitations, like 31 U.S.C. § 3731(b), 27 U.S.C. §§ 2415 and 2416 contain general statute of limitations for claims brought by the government. Section 2415 sets general *limitations periods for various types of* actions. For purposes of calculating the limitations periods set out in § 2415, § 2416 lists certain time periods which are to be excluded. Section 2416 specifically excludes any period of time during which "facts material to the right of action are not known and could not be known by an official of the United States charged with the responsibility to act in the circumstances." 28 U.S.C. § 2416(c). The language in 28 U.S.C. § 2416(c) is sufficiently similar to the language in 31 U.S.C. § 3731(b)(2), that the undersigned finds that cases interpreting § 2416(c) provide persuasive guidance in determining how to interpret § 3731(b)(2). *See United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 777 F.Supp. 195 (N.D.N.Y.1991), *aff'd*, 985 F.2d 1148 (2nd Cir.1993) (an FCA case where the court used § 2416(c) to help interpret § 3731(b)(2)).

a. Based on his discussions with Mr. Williams, Mr. Koch made plans to try and develop a device that could be marketed to producers to help them detect fraudulent measurement practices on their leases. The proposed product never got past the development stage and was eventually abandoned by Mr. Koch.

6. Beginning some time in late 1987 and early 1988, Mr. Koch began a full-scale investigation of Defendants' measurement practices.

7. On February 12, 1988, Mr. Koch filed an amendment to his complaint in *Oxbow Energy Inc. v. Koch Industries, Inc.*, 686 F.Supp. 278 (D.Kan.1987). *See* Doc. No. 281, App. 5. The amendment added two RICO counts to the complaint. Mr. Koch filed the RICO allegations in part based on information obtained from written statements, interviews and affidavits from current and former employees of Defendants, and from information learned through an investigation conducted by his counsel.

    a. The allegations in Mr. Koch's RICO complaint are strikingly similar to the allegations in this case. Mr. Koch again alleged that Defendants had schools at which they trained and encouraged their gaugers to steal by fraudulently understating the volume of product being purchased. Mr. Koch also alleged that a gauger's performance was tied to his ability to create overages for Defendants. *Id.* at ¶ 102.

    b. Mr. Koch described in detail at least one method used by gaugers to create overages. Mr. Koch alleges that gaugers would misstate the information recorded by gaugers on a run ticket. According to Mr. Koch, the gauger would falsify the top gauge, the amount of water in the tank, the temperature, and the bs & w. *Id.* at ¶ 103.

    c. Mr. Koch also alleged that Defendants' gaugers created false tank-tables, which are used to determine

how much oil a tank can hold. *Id.* at ¶ 104.

    d. Mr. Koch also alleged that Defendants' gaugers created false meter correction factors so that the meter would mis-state the amount of product purchased, or bypassed the meter all together. *Id.* at 105.

8. On July 29, 1988, Mr. Koch filed a counterclaim in *Koch v. Koch,* No. 88–1320–K, 1988 WL 130669 (D.Kan.1988). *See* Doc. No. 281, App. 4. In his counterclaim, Mr. Koch made allegations identical to those raised in February of 1988 in the *Oxbow Energy* case discussed directly above. *Id.* ¶¶ 61–75.

9. The information filed with this Court by Plaintiffs in connection with the "original source"/subject mater jurisdictional attacks lodged by Defendants establish that a large majority of the information used by Plaintiffs to support the bringing of this lawsuit was discovered by Plaintiffs prior to September 30, 1988. *See* Doc. No. 282, App. 8, Ex. A–1; and App. 9. *See also,* Doc. No. 282, App. 15, ¶ 4.

10. William A. Presley, one of the Plaintiffs, states in his affidavit that

[b]y June of 1988, based on the statements I had obtained and those from other investigators, I was convinced that Koch and its affiliated companies had indeed been stealing crude oil and natural gas from producers for many years by a nationwide and company-wide scheme of intentional mismeasurement, and thus underreporting the amount of product they were taking from producers.

Doc. No. 282, App. 15, ¶ 5.

11. Mr. Presley had also become aware of the FCA itself in June 1988.

12. In July 1988, Mr. Koch met with members or investigators wit the United States Senate's Select Committee on Indian Affairs. After this meeting, Mr. Koch began focusing his investigation on federal and Indian leases.

The Tenth Circuit has held that the allegations alleged by Mr. Koch in the two 1988 District of Kansas cases (i.e., *Oxbow* and *Koch*) are substantially identical to the allegations in this case. The Tenth Circuit held as follows:

> Allegations that Defendants, by deliberate and systematic mismeasurement, stole crude oil and natural gas from Federal and Indian lands were publicly disclosed on three occasions prior to Precision filing this qui tam action.... William Koch, Precision's majority shareholder, raised allegations of crude oil theft in three previous lawsuits. These allegations were embodied as RICO counts in civil suits instituted by William Koch in 1981, 1982, and 1985. *See Oxbow Energy, Inc. v. Koch Indus., Inc.*, 686 F.Supp. 278 (D.Kan.1988); *Koch v. Koch*, 1989 WL 87624, No. 88–1320–K (D.Kan. July 19, 1989), *aff'd* 903 F.2d 1333 (10th Cir.1990); and *Koch v. Koch Indus., Inc.*, 127 F.R.D. 206 (D.Kan.1989). Substantial identity exists between the RICO allegations and Precision's FCA allegations.... [T]he record [also] reveals these same allegations were disclosed in numerous news releases.

*The Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548, 553 (10th Cir.1992). Based on the substantial identity of the allegations in this and the Kansas cases, which were filed before September 30, 1988, and based on the undisputed evidence summarized above, the undersigned finds that the "very essence" of the FCA claims at issue in this case were reasonably knowable to Plaintiffs before September 30, 1988.

Plaintiffs argue that the evidence discussed above does not establish that Plaintiffs were aware that "federal" and "Indian" leases were being affected by Defendants' mis-measurement practices. Plaintiffs' argument is inconsistent with the Tenth Circuit's holding in *Precision I*, which found the allegations in this case that "Defendants, by deliberate and systematic mismeasurement, stole crude oil and natural gas from *Federal and Indian lands,*" were substantially identical to those in the two Kansas cases. Also, based on Mr. Koch's involvement at the highest level of Defendants' management structure for almost 20 years, it would be unreasonable to assume that Mr. Koch was unaware of the fact that Defendants' purchased oil and gas from federal and Indian leases. Mr. Koch certainly discovered, prior to September 30, 1988, that Defendants' were intentionally mis-measuring on non-federal and Indian leases. There is nothing in the record which would establish that the fact that Defendants' were mis-measuring on federal and Indian lease was also not "reasonably knowable" to Mr. Koch prior to September 30, 1988.

Plaintiffs also argue that the evidence summarized above establishes only that they were aware that Defendants were stealing product from producers, but not that Defendants' were under-reporting royalties, which is the basis for this lawsuit. The evidence summarized above, and the allegations in the two Kansas lawsuits, clearly establish that Plaintiffs were aware that Defendants' were (1) reporting to producers that they were taking less oil than Defendants were actually taking, and (2) paying producers based on this lower figure. Knowing these facts, Plaintiffs have not explained why it would not have been "reasonably knowable" to them that royalty payments, which are based directly on the amount of product sold, were also being affected by Defendants' alleged mis-measurement.

The undersigned finds that the "very essence" of the FCA claims at issue in this case was reasonably knowable to Plaintiffs before September 30, 1988. Thus, Plaintiffs cannot benefit from the extended statute of limitations provided in 31 U.S.C. 3731(b)(2). Plaintiffs are, therefore, limited to the six-year statute of limitations provided in § 3731(b)(1).[16]

### D. Conclusion

The six year statute of limitations in 31 U.S.C. § 3731(b)(1) applies in this case. The

---

**16.** Having found that the ten-year statute of limitations in § 3731(b)(2) is not applicable in this case, the undersigned will not address the retroactivity issues which would have had to be addressed if § 3731(b)(2), which was added to the FCA in 1986, were applied to this case. The undersigned expresses no opinion, however, as to the correctness of the retroactivity objections raised by Defendants.

ten-year statute of limitations in § 3731(b)(2) does not apply to this case because either (1) Congress did not intend § 3731(b)(2) to apply to FCA actions brought by *qui tam* relators; or (2) if Congress intended § 3731(b)(2) to apply to FCA actions brought by *qui tam* relators, Congress also intended for the Court to look to the relator's, as well as the government's, knowledge. In this case, the relators were aware of the "essence" of the claims in this case more than three years before this case was filed. Due to their knowledge, Plaintiffs are, therefore, precluded from relying on § 3731(b)(2)'s 10–year statute of limitations.

### CONCLUSION

Pursuant to Fed.R.Civ.P. 15(c), the First Amended Complaint filed in this action (*Precision II*) relates back to the filing of the original Complaint in this action on September 30, 1991. The Complaint in this action does not, however, relate back to the original Complaint filed in *Precision I* on May 25, 1989. Thus, the statute of limitations applicable to the claims in the First Amended Complaint was tolled on September 30, 1991, not May 25, 1989.

The statute of limitations applicable to the FCA claims in the First Amended Complaint is the six-year statute in 31 U.S.C. § 3731(b)(1), not the ten-year statute in § 3731(b)(2). Plaintiffs may, therefore, recover for any FCA claim that accrued after September 30, 1985. All parties agree that the FCA claims in the First Amended Complaint accrue when Defendants submit a monthly royalty report to the federal government or to an Indian tribe (e.g., MMS–2014 and Osage Royalty Report) or when Defendants submit a monthly accounting to a 100% division order purchaser (e.g., check stubs).[17]

For the reasons discussed above, the undersigned recommends that Plaintiffs' motion (doc. no. 260) and Defendants' motion (doc.

---

17. The parties' agreement on the accrual of the FCA claims in this case is subject to the objections raised in their objections to the undersigned's January 27, 1999 Report and Recommendation regarding the proper interpretation of the FCA's liability and penalty provisions. *See* Doc. No. 425, 461 and 462. Plaintiffs believe that run tickets and not MMS–2014 or Osage

no. 280) be ***GRANTED IN PART and DENIED IN PART.***

### OBJECTIONS

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States,* 950 F.2d 656 (10th Cir.1991); and *Talley v. Hesse,* 91 F.3d 1411, 1412–13 (10th Cir.1996).

---

Royalty Reports should be the triggering event for FCA penalties. Defendants believe that they have no liability under the FCA with respect to the 100% division order payees. Thus, the accrual issue may have to be revisited by the Court depending on how it rules on the objections to the January 27, 1999 Report and Recommendation.